# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 18, 2013        Decided January 24, 2014

No. 12-5020

JAMES H. ROANE, ET AL.,
APPELLEES

JEFFREY PAUL,
APPELLANT

BRUCE WEBSTER AND ANTHONY BATTLE,
APPELLEES

v.

MICHELE M. LEONHART, ADMINISTRATOR, DRUG
ENFORCEMENT ADMINISTRATION, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-02337)

———

*Keith M. Rosen* argued the cause for appellant. With him on the briefs was *Abbe David Lowell*. *Gary Proctor* entered an appearance.

*Benton Peterson*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Ronald C.*

2

*Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: TATEL and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Federal death row inmate Jeffrey Paul moved to intervene in this lawsuit, which challenges the government's method of carrying out lethal injections and its failure to disclose its execution procedures. The district court denied his motion. For the reasons set forth below, we reverse.

I

Three federal death row inmates filed this lawsuit in December 2005 against various officials responsible for designing and implementing the federal lethal injection protocol.[*] Although their primary claim alleged that the three-drug cocktail called for in the protocol violated the Eighth

---

[*] These defendants were (a) the Attorney General, who has final responsibility for carrying out executions; (b) the Director of the Bureau of Prisons, who is tasked with promulgating rules and regulations governing federal executions; (c) the Medical Director of the Bureau of Prisons, who is responsible for overseeing the provision of medical care to federal inmates; (d) the Warden of the United States Penitentiary at Terre Haute, Indiana, who is charged with management of the federal prison where all executions are carried out; (e) the Clinical Director at Terre Haute, who is the chief medical officer at that prison; and (f) the Administrator of the Drug Enforcement Agency, who is responsible for regulating the manufacture, distribution, and possession of controlled substances, including the drugs used in carrying out executions.

Amendment's bar against cruel and unusual punishment, the inmates also brought a due process challenge to the government's refusal to disclose the procedures that would be used to execute them. The district court stayed their executions pending the resolution of these claims.

The inmates' lawsuit has not proceeded quickly. The suit was stayed in February 2006 pending the outcome of *Hill v. McDonough*, 547 U.S. 573 (2006), which raised the question of whether a challenge to a state lethal injection protocol could proceed under 42 U.S.C. § 1983. In June 2006, the Supreme Court announced that it could. In the wake of the decision in *Hill*, the government successfully sought extensions of time in August 2006 and October 2006 to answer the inmates' complaint, finally doing so in November 2006. By the time of the original discovery deadline in June 2007, little discovery had been conducted and not a single deposition had been taken. That same month, the district court allowed three other death row inmates to intervene in the suit and ordered that discovery be extended until January 2008. But in December 2007, the suit was stayed once again pending the resolution of *Baze v. Rees*, 553 U.S. 35 (2008), an Eighth Amendment challenge to Kentucky's lethal-injection protocol. When the Supreme Court upheld Kentucky's protocol, the litigation in this case resumed, though activity was limited to some additional discovery and motions.

In April 2011, the government notified the district court that sodium thiopental, one of the three drugs used to carry out executions as called for by the federal protocol, was no longer available. (The record does not explain the reason why.) In July 2011, the government informed the court that in light of the unavailability of sodium thiopental it had decided to alter the drug mixture used in its executions. Since then, activity in this case has been limited to the government filing

monthly status reports as it continues the still-uncompleted process by which it will eventually determine what drug combination will be used. In the meantime, the inmates' claims remain unresolved.

Paul, who had already been convicted of murder and sentenced to death, *see United States v. Paul*, 217 F.3d 989, 995 (8th Cir. 2000), moved to intervene, both permissively and as of right, on October 6, 2009, the day after his unsuccessful post-conviction proceedings came to a close. Paul's motion stipulated that he would not seek to revisit any of the issues already decided by the district court, the same concession made by three other death row inmates who the district court allowed to intervene in 2007.

Paul pointed to this concession and the fact that the litigation was still in its early stages to argue that his intervention motion was timely because granting it would not disrupt or delay the current litigation to the detriment of the existing parties. But the district court denied his motion as untimely, characterizing Paul's argument that the litigation would not be disrupted as "speculation" and emphasizing the significant amount of time that had elapsed since the suit was filed in 2005. Paul unsuccessfully moved for reconsideration by the district court. When his motion was denied, he appealed to this court. We have jurisdiction under 28 U.S.C. § 1291.

II

According to the government, we need not reach the merits of Paul's appeal because it has been rendered moot by the unavailability of sodium thiopental. Even though it was not raised below, we consider the suggestion of mootness

because it "implicates our jurisdiction." *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 537 (1978).

The mootness doctrine is rooted in the constitutional requirement that "limits federal courts to deciding actual, ongoing controversies." *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011) (internal quotation marks omitted). "A case becomes moot . . . when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (internal quotation marks omitted). Accordingly, even if "litigation poses a live controversy when filed," a court is required to "refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Am. Bar Ass'n*, 636 F.3d at 645 (internal quotation marks omitted).

The government argues this suit is moot because it has ceased using the three-drug mixture that the inmates challenge. But this argument falters under the "voluntary cessation" exception to mootness, which states that a lawsuit is not mooted by a defendant's voluntary cessation of challenged activity unless that defendant "demonstrat[es] that there is no reasonable expectation that the wrong will be repeated." *Id.* at 648 (internal quotation marks omitted). Here, the government cannot meet that heavy burden because it has merely suspended executions using the three-drug cocktail called for by the current protocol and has not yet issued a new protocol. The government further argues that the unavailability of sodium thiopental removes the very reason Paul seeks to join the lawsuit. Without sodium thiopental, no one can be executed using the three-drug cocktail Paul seeks to challenge. But the government's argument overlooks the fact that not all of the claims in this lawsuit are tied to that

cocktail. The inmates' due process challenge, which attacks a refusal to disclose the procedures that will be used to execute them, is an independent claim that remains live regardless of whether the government can use the particular combination of drugs it has used in the past. This suit still presents a live controversy, and we must consider the merits of Paul's argument that he is entitled to intervene. *See Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012) ("[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (alteration in original) (internal quotation marks omitted)).

III

A district court must grant a timely motion to intervene that seeks to protect an interest that might be impaired by the action and that is not adequately represented by the parties. *See* FED. R. CIV. P. 24(a)(2); *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008). The district court determined that although Paul had a legally protected interest in this lawsuit, it would not be impaired by this suit and would be adequately represented by the other inmates. Most importantly for this appeal, the district court ruled that Paul's motion to intervene was simply brought too late in a lawsuit that already had taken too much time.

On appeal, Paul challenges each of those determinations. Significantly, the government defends only one: that Paul's motion was untimely. We see no reason to question the government's apparent concession that in all other ways Paul's motion was adequate. At a minimum, if the suit proceeds without Paul, a decision rejecting the inmates' claims could establish unfavorable precedent that would make it more difficult for Paul to succeed on similar claims if he brought them in a separate lawsuit of his own, which is

sufficient to support intervention under our caselaw. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003); *see also Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967). Likewise, it seems obvious that the existing parties to the suit may be inadequate representatives of Paul. *See Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). Unlike him, they have little reason to press for the rapid resolution of the suit because their executions have been stayed. Therefore, we focus the remainder of our discussion on the disputed question of whether Paul's motion was timely. We review a district court's assessment of timeliness for abuse of discretion. *See Natural Res. Def. Council v. Costle*, 561 F.2d 904, 907 (D.C. Cir. 1977).

The timeliness of a motion to intervene is "to be judged in consideration of all the circumstances." *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (internal quotation marks omitted). Though the "time elapsed since the inception of the suit" is relevant, *id.* (internal quotation marks omitted), measuring the length of time passed "is not in itself the determinative test," *Hodgson*, 473 F.2d at 129, because we do not require timeliness for its own sake. *See* 7C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1916, at 532 (3d ed. 2007) ("The timeliness requirement is not intended as a punishment for the dilatory . . . ."). Instead, the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties. *See id.* at 541 ("The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case."); *cf. Hodgson*, 473 F.2d at 128-29. Thus, even where a would-be intervenor could have intervened sooner, in assessing timeliness a court must weigh whether any delay in seeking

intervention "unfairly disadvantage[d] the original parties." *Costle*, 561 F.2d at 908.

The district court lost sight of this fundamental principle. Though acknowledging Paul's argument that no existing party would be prejudiced by his intervention, and even recognizing that his argument might have merit, the court declined to give any weight to the point, believing that speculating as to whether other parties would be prejudiced was "risky." The court focused instead on the amount of time that had elapsed since the suit had been filed. Because Paul *could* have intervened earlier, the court ruled that he *should* have intervened earlier. In the district court's view, Paul's undue delay rendered his motion to intervene untimely.

That determination was an abuse of the court's discretion. In focusing on the amount of time that had elapsed between the filing of the lawsuit and Paul's motion to intervene, the district court overlooked what the relevant caselaw says is the most important consideration: the fact that granting Paul intervention was highly unlikely to disadvantage the existing parties. *See Costle*, 561 F.2d at 907-08. Paul both foreswore reopening discovery and stipulated that he would not seek to revisit issues that had already been decided. *See id.* at 908 (explaining that the risk of prejudice to existing parties was minimal since the putative intervenor did not seek to upset prior decisions in the case). Furthermore, adding Paul as a party would have required no additional factual development. The claims in this litigation are legal challenges to the federal government's execution protocol. *Cf. United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1294 (D.C. Cir. 1980) (explaining that intervention motion, which would have been untimely if made for the purpose of "presenting evidence or argument," was timely because made for a more "limited purpose"). Other death row inmates had been permitted to

intervene in 2007, apparently without prejudicing the existing parties, and nothing indicated that the posture of the case had changed meaningfully before Paul sought to intervene. *Cf. EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1048 (D.C. Cir. 1998) (discussing whether other parties had been permitted to intervene). Paul's intervention carried no risk of prejudicing the existing parties. The government does not suggest otherwise. Its briefing makes the same mistake as the district court, focusing solely on the substantial amount of time that elapsed before Paul sought to intervene without ever explaining how any party would be prejudiced by Paul's intervention. But in the absence of any indication that Paul's intervention would give rise to such prejudice, his motion was timely and he was entitled to intervene as of right. Given that he was, we need not determine whether the district court also erred in denying his motion for permissive intervention.

## IV

Because this appeal is not moot and Paul's intervention motion was timely, we reverse and remand with a direction that the district court grant Paul's motion to intervene as of right. *See Fund for Animals, Inc.*, 322 F.3d at 737-38.

*So ordered.*