# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 9, 2014        Decided December 2, 2014

No. 13-5245

AMADOR COUNTY, CALIFORNIA,
APPELLEE

BUENA VISTA RANCHERIA OF THE ME-WUK INDIANS,
APPELLANT

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-00658)

---

*Padraic I. McCoy* argued the cause for appellant. With him on the briefs was *Carrell C. Doyle*. *Mark C. Tilden* entered an appearance.

*Dennis J. Whittlesey* argued the cause and filed the brief for appellee.

Before: KAVANAUGH, *Circuit Judge*, and SENTELLE and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

Concurring opinion filed by *Senior Circuit Judge* RANDOLPH.

SENTELLE, *Senior Circuit Judge*:   In 2005, Amador County, California brought suit against the Department of Interior challenging the Secretary's approval of a gaming compact between the Buena Vista Rancheria of Me-Wuk Indians (the "Tribe") and the State of California.  After nearly six-and-a-half years of litigation, the Tribe sought to intervene for the limited purpose of moving to dismiss the amended complaint under Federal Rule of Civil Procedure 19.  The district court denied the motion as untimely, and this appeal followed.  Because we conclude that the district court did not abuse its discretion, we affirm.

## BACKGROUND

The Buena Vista Rancheria of Me-Wuk Indians is a federally recognized Indian tribe that occupies a 67-acre parcel of land located entirely within Amador County, California.  *See Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 79 Fed. Reg. 4,748, 4,749 (Jan. 29, 2014).  In 1999, the Tribe negotiated a gaming compact with the State of California under the Indian Gaming Regulatory Act ("IGRA"), and submitted the compact to the Secretary of the Interior for approval.  Under the IGRA, once the Tribe submits a gaming compact to the Secretary, the Secretary can either approve the compact; disapprove the compact, if it violates certain federal laws; or do nothing.  If the Secretary does nothing, the compact is deemed approved after forty-five days.  25 U.S.C. § 2710(d)(8).  In 2000, the Secretary approved the compact.  *Notice of Approved Tribal-State*

*Compacts*, 65 Fed. Reg. 31,189, 31,189 (May 16, 2000). In 2004, the Tribe submitted an amended gaming compact to the Secretary. This time, the Secretary took no action on the amended compact for forty-five days, at which point the compact was deemed approved by operation of law. *See* 25 U.S.C. § 2710(d)(8)(C).

In April 2005, Amador County challenged the Secretary's "no-action" approval of the amended compact, arguing that the Tribe's land fails to qualify as "Indian lands"—a statutory requirement for gaming under the IGRA. *See id.* at § 2710(d)(1). On July 22, 2005, Interior filed a motion to dismiss the case, arguing that the County's claims were not subject to judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701(a)(2). Shortly thereafter, the Tribe sought leave to participate in the case as amicus curiae. The Tribe argued that the suit had to be dismissed under Rule 19 of the Federal Rules of Civil Procedure because the Tribe was an indispensable party to the litigation, and the Tribe is protected by sovereign immunity so that the litigation could not proceed. The Tribe also claimed that Interior did not adequately represent the Tribe's interests. The district court denied the Tribe's motion without explanation.

In 2008, while Interior's motion to dismiss was still pending, Amador County filed an amended complaint, and Interior again moved to dismiss. The district court granted Interior's motion, finding that the Secretary's "no action" approval was "unreviewable," as the decision to approve a gaming compact is committed to agency discretion. *Amador County, Cal. v. Kempthorne*, 592 F. Supp. 2d 101, 106–07 (D.D.C. 2009). Amador County appealed to this court. We reversed. *See Amador County, Cal. v. Salazar*, 640 F.3d 373 (D.C. Cir. 2011).

Upon review, we concluded that judicial review was not precluded under the APA, as the decision to approve a compact is not committed to agency discretion, but guided by principles established in the IGRA. *Amador County*, 640 F.3d at 380–81. We then "turn[ed] to the merits" of the suit, *i.e.*, whether the Tribe's land qualifies as "Indian land" under the IGRA. *Id.* at 383. However, because the answer to this question turned on extrinsic evidence not in the record, we remanded to the district court to "assess the merits in the first instance." *Id.* at 384.

Following this court's remand, the district court ordered the parties to file a Joint Status Report by November 7, 2011. Three days before the parties filed the Joint Status Report, the Tribe filed its motion to intervene. In June 2013, the district court denied as untimely the Tribe's motion to intervene, noting that the parties' Joint Status Report stated that the case is "ready for oral argument and decision on the merits." The Tribe now appeals the district court's denial of its motion for intervention.

### ANALYSIS

Intervention of right as sought by appellant is governed by Federal Rule of Civil Procedure 24. That rule provides:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
> > (1) is given an unconditional right to intervene by a federal statute; or
> >
> > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Under that rule, a district court must grant a motion to intervene if the motion is timely, and the prospective intervenor claims a legally protected interest in the action, and the action threatens to impair that interest, unless that interest is adequately represented by existing parties. *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008). At the threshold, however, the motion to intervene must be timely. *U.S. v. British Am. Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006). If the motion is untimely, the explicit language of the rule dictates that "intervention must be denied." *NAACP v. New York*, 413 U.S. 345, 365 (1973); *U.S. v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1294 (D.C. Cir. 1980).

Timeliness "is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *British Am. Tobacco*, 437 F.3d at 1238 (internal quotation marks and citation omitted). We review the district court's denial of intervention for untimeliness under the abuse of discretion standard. *Id.* A district court abuses its discretion when it applies the wrong legal standard or relies on clearly erroneous findings of fact. *See In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003).

In this case, after setting forth the timeliness test, the district court found that the Tribe's motion for intervention was untimely. The district court found that the Tribe, from the outset of this litigation, both knew that the suit could adversely affect its rights, and questioned the adequacy of the United States' representation. Mem. Op. & Order at 6–9, No. 05-cv-658 (D.D.C. June 4, 2013). The district court reasoned that regardless of whether it measured the elapsed time from the time when the prospective intervenor "'knew or should have known that any of its rights would be directly affected by the

litigation,'" *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (quoting *Nat'l Wildlife Fed'n v. Burford*, 878 F.2d 422, 433–34 (D.C. Cir. 1989)), or when the "'potential inadequacy of representation came into existence,'" *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)), timeliness weighs against the Tribe. Mem. Op. & Order 6–9. The district court also considered the Tribe's purpose for intervention, namely to file a Rule 19 motion, and noted that the Tribe's need to intervene to maintain its sovereign immunity was a "significant factor" weighing in favor of allowing intervention. *Id.* at 8 n.6. Lastly, the district court found that granting the Tribe's motion will "further delay resolution of the merits to the detriment of the existing parties," since the case was otherwise ready for a decision on the merits. *Id.* at 8. Weighing all these factors, the district court found that the Tribe's motion was untimely. Having considered "all the circumstances," we conclude that the district court did not abuse its discretion.

Nevertheless, the Tribe offers multiple arguments for reversing the judgment. First, the Tribe asserts that the district court "undervalue[d]" the Tribe's purpose for intervention, that is, to seek dismissal of the action on the basis of the Tribe's sovereign immunity. Appellant's Br. 31–37. The Tribe, relying on *Acree v. Republic of Iraq*, 370 F.3d 41, 50–51 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 556 U.S. 848, 859–60 (2009), argues that because sovereign immunity is jurisdictional, or at least quasi-jurisdictional, the district court had a "heightened duty" to "weigh[] heavily" the Tribe's purpose for intervention. Appellant's Br. 31–33.

The Tribe's argument fails. We have never held that a district court must give extra weight or special consideration to a sovereign's purpose for intervention. We have held that a decision maker abuses its discretion if it fails to consider a

relevant factor. *See Peyton v. DiMario*, 287 F.3d 1121, 1126 (D.C. Cir. 2002). Such is the holding of *Acree*, where this court reversed a district court's finding of untimeliness because it "failed to weigh . . . the purposes for which the Government sought to intervene." *Acree*, 370 F.3d at 50. In this case, the district court considered all the relevant factors, including the Tribe's purpose for intervention, and we will not disturb its judgment.

Next, the Tribe argues that the district court abused its discretion by using the wrong date in computing the elapsed time. Appellant's Br. 22. As the Tribe correctly notes, and as the district court acknowledged, courts measure elapsed time from when the "potential inadequacy of representation [comes] into existence." *See Smoke*, 252 F.3d at 471 (internal quotation marks and citation omitted). The Tribe contends that a conflict of interest did not arise until 2011, when the government, in a separate but related proceeding, acknowledged that a Rule 19 defense was available but refused to assert it because of the United States' interest in seeking a resolution to this case on the merits. Appellant's Br. 27–28. Accordingly, the Tribe argues that the district court should have used 2011, instead of 2005, when weighing the elapsed time factor. We disagree.

Nothing changed in 2011 that warrants using that date in computing the elapsed time. In 2005, the Tribe, in the amicus curiae brief it proffered to the district court, argued that it was an indispensable party to the litigation, that the suit should be dismissed under Rule 19, and the government's representation of the Tribe's interests may be inadequate. Thus, at a minimum, the Tribe and the government knew as early as 2005 that a Rule 19 defense was available. Yet the government never asserted this defense, even though it had the opportunity to do so in its 2008 motion to dismiss. That record belies the notion that the Tribe could have expected inadequate representation from the

government after, but not before, 2011. Indeed, the Tribe all but admits as much by stating it had "earlier concerns about a potential conflict of interest in the United States' representation." Appellant's Br. 22.

The Tribe seeks to avoid this conclusion by arguing that it was not until 2011 that its suspicion of inadequate representation became a reality. Appellant's Br. 28. Yet the Tribe argued in 2005 that "[t]he presence of the United States in this case does not fully protect the Tribe's interests." Proposed Amicus Curiae Br. at 13, No. 05-cv-658 (D.D.C. Aug. 23, 2005). The record demonstrates that the Tribe knew in 2005 as well that the United States might not adequately represent the Tribe's interest. Therefore, the district court did not abuse its discretion in using 2005 as the relevant date in its elapsed time analysis.

Lastly, the Tribe argues that even if the district court used the correct date in the elapsed time analysis, the district court erred because it treated the elapsed time analysis as determinative. According to the Tribe, the district court conflated the elapsed time with the prejudice analysis by focusing exclusively on the delay the motion for intervention will cause, instead of further analyzing how the delay will prejudice the parties.

As we recently stated, the length of time passed "'is not in itself the determinative test.'" *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (quoting *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972)). This is because "we do not require timeliness for its own sake." *Id.*; *see also* 7C Charles Alan Wright et al., Federal Practice and Procedure § 1916, at 532 (3d ed. 2007) ("The timeliness requirement is not intended as a punishment for the dilatory . . . ."). Rather, "the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the

unfair detriment of the existing parties." *Roane*, 741 F.3d at 151. Accordingly, in assessing timeliness, a district court must weigh whether the intervention will "'*unfairly* disadvantage[] the original parties.'" *Id.* (quoting *NRDC v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977)) (emphasis added).

In *Roane*, the district court declined to give any weight to the prejudice factor. The district court in this case found that the case was ready for a decision on the merits, and that the Tribe's intervention would delay resolution of the merits. We have previously concluded that the delay caused by a potential intervenor was sufficient to constitute prejudice where a decision on the merits was pending. *See British Am. Tobacco*, 437 F.3d at 1238–39 (upholding finding of prejudice where the intervention would further delay a "massive trial"); *see also NAACP*, 413 U.S. at 367–69 (affirming denial of intervention for untimeliness where intervention would delay the consent judgment from taking effect); *Stewart v. Rubin*, 948 F. Supp. 1077, 1104 (D.D.C. 1996) (finding prejudice where intervention would delay implementation of the settlement), *aff'd* 1997 WL 369455 (D.C. Cir. 1997).

In this case, the County filed the complaint over nine years ago. In November 2011, the County and Interior agreed that the case was "ready for oral argument and decision on the merits." Joint Status Report at 2, No. 05-cv-658 (D.D.C. Nov. 7, 2011). The Tribe's motion for intervention and the subsequent appeal have delayed a decision on the merits for three years. If the Tribe's motion were granted, a resolution of this case would be further delayed as the district court at the very least would need to accept briefing on the Tribe's Rule 19 motion, hear argument, and rule on the motion. On such facts, we cannot say that the district court abused its discretion in finding that the Tribe's intervention would cause prejudicial delay.

Because we conclude that the district court did not abuse its discretion on the threshold question of timeliness, we need not reach the Tribe's argument that the United States does not adequately represent its interest. *See NAACP*, 413 U.S. at 369.

## CONCLUSION

The district court set forth the proper test, analyzed the relevant factors, and concluded that the Tribe's motion to intervene did not satisfy Rule 24(a)'s timeliness requirement. On this record, we conclude that the district court did not abuse its discretion. The judgment below is therefore

*Affirmed*.

RANDOLPH, *Senior Circuit Judge*, concurring:  I agree that the Tribe's motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure was untimely.  I write separately to mention another basis for denying the motion.

Under Rule 24(a)(2), the motion to intervene must not only be timely, but also the movant must claim

> an interest relating to the property or transaction that is the subject of the action, and [be] so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

The Tribe wanted to intervene in order to assert that it was an indispensable party under Rule 19(a).  The idea being that the Tribe could then invoke its sovereign immunity and have the court dismiss Amador County's action against the Department of the Interior.  In terms of Rule 24(a)(2), the Tribe claimed that the United States did not "adequately represent" the Tribe's "interest" – which the Tribe defined as its sovereign immunity. Appellant's Brief at 46.

The strategy was clever but it would not have worked. The Tribe's interest in its sovereign immunity was not – in the words of Rule 24(a)(2) – "an interest relating to the property or transaction that is the subject of the action."  The very point of the Tribe's motion was to inject sovereign immunity into the case.   The Tribe therefore would not have qualified for intervention as of right even if it had timely filed its motion.