# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 6, 2017            Decided April 13, 2018

No. 15-7023

BRIDZETTE LANE, INDIVIDUALLY AND AS THE PERSONAL
REPRESENTATIVE OF THE ESTATE OF RALPHAEL BRISCOE,
APPELLANT

v.

DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION AND
CHAD LEO, DISTRICT OF COLUMBIA METROPOLITAN POLICE
DEPARTMENT OFFICER,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00514)

*Billy Ponds* argued the cause and filed the brief for appellant.

*Carl J. Schifferle*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With him on the brief were *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: SRINIVASAN and WILKINS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Appellant Bridzette Lane brought this action on her own behalf and as the personal representative of the estate of her deceased son Ralphael Briscoe for wrongful death and survivorship against the District of Columbia and three Metropolitan Police Department officers. Of the twenty counts alleged in the amended complaint, several counts were voluntarily dismissed, summary judgment was entered in favor of the defense as to some counts, and some counts went to trial, ending in a jury verdict for the remaining defendants, the District of Columbia and Officer Chad Leo. Lane appeals from the judgments in favor of the District and Officer Leo. For the reasons set forth below, we affirm the judgment of the district court.

## I. BACKGROUND

The events giving rise to this action occurred in April 2011, when appellee Leo and three other officers were on patrol as part of the Gun Recovery Unit of the Metropolitan Police Department ("MPD"). The officers encountered Briscoe in an apartment parking lot. When one of the officers asked Briscoe if he was carrying a gun, Briscoe fled. Two of the officers pursued Briscoe on foot, while Leo and another officer pursued in a police vehicle. A portion of the chase was captured on a Police Department video camera.

While there is some conflict in the evidence, we relate the further events in the light most favorable to the defendant-appellees as we must in reviewing a jury verdict. *See Pitt v. Dist. of Columbia*, 491 F.3d 494, 502 (D.C. Cir. 2007). Leo testified that he saw Briscoe's right hand moving toward his waistband, causing Leo to fear that he was reaching for a gun.

Briscoe repeatedly looked over his left shoulder, toward the pursuing officers, and turned toward the police vehicle, pointing what appeared to Leo to be a gun. Leo fired two shots. One struck Briscoe in the back and one in the buttocks. Briscoe was transported to the hospital where he died as a result of the wounds.

A police search of the scene of the shooting recovered no actual firearm, but it did produce a broken BB gun, which closely resembled an actual firearm, specifically a Walther PPK pistol. No fingerprints were found on the weapon. Police technicians swabbed the BB gun for DNA, but there is no evidence that the swabs were ever tested.

Lane brought the present action against the District of Columbia and MPD Officers Chad Leo, Jeremy Sharpton, and Guillermo Rivera on behalf of herself and Briscoe's estate. Lane's complaint alleged twenty counts for: violations of the Fourth, Fifth, and Fourteenth Amendments, including municipal liability for the failure to train, supervise, and negligent hiring under 42 U.S.C. § 1983; assault; battery; false arrest; negligent infliction of emotional distress; common law negligence in hiring, training, supervision, and retention; common law negligence; and survival and wrongful death under the D.C. Code. The defendants moved to dismiss Lane's amended complaint. The district court granted in part and denied in part the motion to dismiss, dismissing Lane's Fourteenth Amendment claim. Additionally, Lane agreed to dismiss her claims against Rivera and Sharpton without prejudice.

The remaining defendants, the District and Officer Leo, moved for summary judgment. In her response to the summary judgment motion, Lane voluntarily dismissed nine of her claims. The district court granted in part the District's motion for summary judgment and dismissed Lane's claims against the

District for municipal liability under § 1983, for common law negligence in hiring, training, supervision, and retention, and for violation of due process under the Fifth Amendment. *Lane v. Dist. of Columbia*, 72 F. Supp. 3d 215, 219 (D.D.C. 2014). The case proceeded to trial on the remaining causes of action against Officer Leo for excessive force in violation of the Fourth Amendment and against the District and Officer Leo for false arrest, assault, battery, negligent infliction of emotional distress, and common law negligence.

Ten days before the start of the trial, Lane learned that a fingerprint report from the BB gun was not turned over during discovery. The district court permitted Lane to depose David Murray, an officer knowledgeable about the results of the search and the report. During the deposition, Lane learned that DNA swabs were taken from the BB gun, which also had not been disclosed during discovery. Following this revelation, Lane filed a motion for sanctions based on these late disclosures seeking a default judgment or a five-day continuance, leave to amend the witness list to include Officer Murray, time to allow additional depositions on fingerprinting and biological testing, permission to name experts on this subject, a bar on the defendants eliciting testimony from Officer Murray or other witnesses about this subject matter, an instruction to the jury on the substantial delay caused, and attorney's fees. The district court verbally admonished the defendants, but did not grant Lane's motion for sanctions.

Before trial, the defendants moved in limine to exclude some items of evidence that the plaintiff anticipated offering, two of which are relevant for this appeal. First, they moved to exclude Briscoe's cell phone bill covering the time of the shooting incident. Second, they sought to exclude Lane's anticipated testimony that Briscoe suffered from ADHD and bipolar disorder. As to the phone bill, the court granted the

motion but accepted a stipulation from the defendants that Briscoe was on the phone when the officers encountered him. As to the evidence concerning Briscoe's alleged mental conditions, the court excluded the evidence except insofar as it might be relevant to Briscoe's earning capacity should the jury reach the issue of damages.

The case proceeded to trial. During the trial, Lane voluntarily dismissed her claim for negligent infliction of emotional distress. Following the six-day trial and two days of deliberations, the jury returned a verdict in favor of the defendants on the remaining counts. In answer to a special interrogatory, the jury found that Briscoe "had an object in his hand that reasonably looked like a real gun to Defendant Leo at the time" of the shooting. Following trial, Lane moved for a new trial, arguing that the jury's verdict was against the weight of the evidence. The district court denied Lane's motion. *Lane v. D.C.*, 104 F. Supp. 3d 7-8 (D.D.C. 2015). Lane timely filed this appeal.

## II. ANALYSIS

Lane contends on appeal that the district court erred in excluding the cell phone bill and the testimony regarding Briscoe's alleged mental condition; denying Lane's motion for sanctions; and denying Lane's motion for a new trial. She further contends that the court erred in the grant of summary judgment in favor of the District on her failure-to-train and negligent training claims. For the reasons set forth below, we reject each of her contentions.

A. *Trial Proceedings*

    1. Exclusion of Evidence

We review the district court's grant of the motion in limine excluding the phone bill and the mental condition evidence for abuse of discretion. *Huthnance v. Dist. of Columbia*, 722 F.3d 371, 377 (D.C. Cir. 2013). We will reverse an erroneous evidentiary ruling only if it affects a party's substantial rights. *Id.* Neither of the exclusions in this case is reversible error.

    a. Cell Phone Bill

The cell phone bill shows the phone in use between 2:22 pm and 2:25 pm at the time of the shooting, which other evidence established at 2:24:24 pm. Because the defense stipulated that Briscoe was on the phone when they encountered him, and there was no apparent relevance to the question of whether Briscoe affirmatively terminated his phone call within the next three minutes, we cannot say that the district court abused its discretion by excluding the cell phone bill as cumulative. Even if a call remained connected at the time Briscoe was shot, that evidence would have minimal relevance and its exclusion thus would not affect Briscoe's substantial rights, *see Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 168 (D.C. Cir. 2007), given that Briscoe may very well have put his phone away without hanging up when he began running.

Lane argues that the cell phone evidence became probative because two of the police witnesses, including appellee Leo, testified that they did not recall Briscoe talking on the phone. Nonetheless, in light of the defense stipulation, the evidence remains cumulative. Furthermore, even if we credit Lane's argument that the bill became relevant because of the testimony of two witnesses that they did not recall the circumstance to

which the defense had stipulated, "when the court's initial [evidentiary] ruling, correct when made, is proved erroneous in the light of subsequent evidence," the objecting party must renew the objection. *United States v. Sheehan*, 512 F.3d 621, 627 (D.C. Cir. 2008) (quoting *United States v. Lewis*, 433 F.2d 1146, 1152 (D.C. Cir.1970)). Because Lane did not seek to introduce the cell phone bill or renew her objection during the trial, we will not reverse the district court's decision to exclude the cell phone bill.

> b. Lane's Testimony on Briscoe's ADHD and Bipolar Disorder

Lane next argues that the district court erred in excluding her testimony that Briscoe suffered from ADHD and bipolar disorder. While this testimony would have been of questionable relevance at best, the trial court clearly did not err in excluding Lane's testimony on Briscoe's medical condition. A trial court does not err by excluding evidence of a medical condition from a lay witness. A lay witness may not testify based on scientific or other specialized knowledge. Fed. R. Evid. 701(c). We do "not disturb the ruling of a district court where . . . an independent basis for that ruling is uncontested." *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 863 (D.C. Cir. 2008). Even if the evidence would have been probative, Lane cannot credibly contend that she was qualified to testify about a medical diagnosis. The district court did not abuse its discretion in excluding Lane's testimony on Briscoe's medical condition.

> 2. Sanctions

Next, Lane argues that the district court erred by not awarding sanctions against the defendants for discovery violations. Lane argues that two discovery violations—the late disclosures of a fingerprint report and the existence of a DNA

swab of the BB gun—prejudiced her case, and therefore the district court should have sanctioned the defendants. "[T]he district court has broad discretion to impose sanctions for discovery violations." *Bonds v. Dist. of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996). "When reviewing the district court's denial of sanctions, the question is not whether we would have ordered sanctions, but instead is whether the district court abused its discretion in declining to do so." *Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 15 (D.C. Cir. 2015).

Lane argues that the late disclosure of the fingerprint report prejudiced her because it was too late for her to engage a fingerprint expert. Lane contends that her expert could testify—consistent with her theory that the BB gun was planted—that the fingerprint testing was flawed and that if a different testing method was used it might have picked up fingerprints belonging to someone other than Briscoe. The district court found that such testimony would require a "chain of inferences" that was "too attenuated" and would confuse the jury. Lane also argues that a fingerprint expert could testify that if Briscoe handled the BB gun, he would have left fingerprints. However, the defendants timely disclosed that no fingerprints were found on the BB gun. It was only the report itself that was disclosed late. Because Lane knew there were no fingerprints, she had the opportunity to pursue this type of expert testimony despite the late disclosure of the fingerprint report.

Next, Lane argues that the late disclosure of the DNA swab prejudiced her because it was too late for her to depose other witnesses about whether the swab was tested for DNA. The defendants offered affidavits that the swab was never tested for DNA and the district court concluded that Lane had "no basis" to conclude the swab was tested. Therefore, any additional questioning by Lane regarding whether the swab was tested was

unlikely to lead to any probative evidence, and we cannot hold that the district court abused its discretion in so ruling.

Further, there is no evidence or accusation that the defendants' discovery omissions were intentional. Given the district court's broad discretion regarding sanctions, Lane's failure to show prejudice from the discovery violations, and the lack of intentional misconduct, we find no error in the district court's denial of Lane's motion for sanctions.

### 3. Motion for a New Trial

Lane also appeals the district court's denial of her motion for a new trial, arguing that the jury verdict was against the weight of evidence. Our review of a district court's denial of such a motion is extremely limited. *Daskalea v. Dist. of Columbia*, 227 F.3d 433, 443 (D.C. Cir. 2000). The district court's consideration of such a motion and our consideration of the district court's denial begins with the proposition that a jury verdict stands "unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict." *Czekalski v. LaHood*, 589 F.3d 449, 456 (D.C. Cir. 2009) (internal quotation marks omitted). In urging that we should nonetheless reverse the district court's denial of the motion, appellant relies heavily on a single piece of evidence—the police camera video.

Lane argues that the video evidence clearly shows that Briscoe was not carrying a gun. Therefore, Lane reasons, a jury verdict resting on the conclusion that Officer Leo reasonably believed that he saw a gun was against the weight of the evidence. Lane supports her contention by arguing that Officer Leo reviewed the video frame-by-frame during trial and testified that he did not see anything in Briscoe's hands. Further, Lane argues that no evidence was presented at trial that Lane was

carrying or possessed a BB gun except for Officer Sheehan's testimony that Briscoe said "it wasn't even real" after he was shot. Advancing her theory that the BB gun was planted, Lane argues that Officers Katz, Leo, Torres, and Sheehan impeached themselves by saying no items were moved or touched at the crime scene.

In denying the motion for a new trial, the court noted the following additional evidence was presented to the jury: Officers Leo and Torres testified that they saw Briscoe holding a gun, the BB gun recovered from the scene, and the video. The jury was shown the video and was able to make their own determination regarding the credibility of the officers' testimony and whether Briscoe appeared to have in his hand a cell phone, a shadow, or a gun. The district court did not abuse its discretion in denying Lane's motion for a new trial and we affirm.

B. *Summary Judgment*

Finally, Lane appeals the district court's partial grant of summary judgment and the dismissal of her failure-to-train and negligent training claims against the District. Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the court must view all facts, and draw all reasonable inferences, in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). We review de novo the district court's grant of summary judgment. *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1074 (D.C. Cir. 2014).

A municipality is liable under § 1983 only when the municipality itself causes the constitutional violation at issue.

*City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). Policy omissions, including failure to train, which rise to the level of deliberate indifference, establish a cause of action. *Daskalea*, 227 F.3d at 441. There is deliberate indifference when the need for training reaches a level of moral certainty and the constitutional consequences become obvious. *Id.* at 441-42.

In addition to a failure-to-train cause of action under *Monell*, Lane also brought a common law claim for negligent training. Liability for common law negligent training is derivative of the employer's tort liability. "In a negligence case, the plaintiff has the burden of establishing 'the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the deviation and the plaintiff's injury.'" *Young v. Dist. of Columbia*, 752 A.2d 138, 145 (D.C. 2000) (quoting *Dist. of Columbia v. Hampton*, 666 A.2d 30, 35 (D.C. 1995)).

Lane offered evidence that there is a national standard of care in training Gun Recovery Unit ("GRU") officers and that the MPD deviated from this standard of care by not providing the GRU officers specialty training in identifying firearms. If the GRU officers had specialty training, Lane argues, they would not have misidentified Briscoe's cell phone as a gun.

However, any error that Lane argues may have been committed by the district court is harmless because the jury verdict vitiates both the failure-to-train and negligent training claims. Under a *Monell* failure-to-train theory, Lane must prove "a direct causal link" between the failure to train and a constitutional violation. *Harris*, 489 U.S. at 385. The initial inquiry is whether there was a "predicate constitutional violation." *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). The Supreme Court has reasoned, in the

context of civil rights claims against a municipality, if "[an officer] inflicted no constitutional injury . . . , it is inconceivable that [the city] could be liable." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). In this case, the jury found that Lane did not show that Officer Leo caused any constitutional injury to Briscoe. Without a predicate constitutional violation, Lane cannot sustain a failure to train cause of action.

This also means that Lane's negligent training claim fails. Liability for negligent training requires the plaintiff to show a relationship between a deviation in the standard of care and an injury. *Young*, 752 A.2d at 145. Because the jury found no underlying common law tort, Lane cannot take the next step required to show a relationship between any deviation from the standard of care and the injury.

## III. CONCLUSION

For the reasons set forth above, we deny Lane's appeal and affirm the district court's judgment.