# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 22, 2024      Decided August 9, 2024

No. 23-7050

JOSE T. VASQUEZ,
APPELLANT

v.

DISTRICT OF COLUMBIA AND RUBEN AGOSTO, OFFICER,
INDIVIDUALLY AND IN HIS CAPACITY AS AN EMPLOYEE OF THE
DISTRICT OF COLUMBIA,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-02194)

*Creighton R. Magid* argued the cause and filed the briefs for appellant.

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With him on the brief were *Brian L. Schwalb*, Attorney General, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy

Solicitor General, and *Graham E. Phillips*, Deputy Solicitor General.

Before: WILKINS and RAO, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: The Metropolitan Police Department ("MPD") has twice detained Jose Vasquez for one reason: He has the same name and date of birth as another man who is a wanted criminal. Of course, sharing a name and date of birth with a wanted criminal is not a crime. So, Mr. Vasquez sued the District of Columbia and one of its officers for violations of his constitutional rights under Section 1983, and the District of Columbia alone for negligence, malicious prosecution, and false imprisonment.

The District Court disposed of the Section 1983 and negligence claims at summary judgment, but the two other common law claims went to trial where the jury held the District of Columbia liable for false imprisonment, but not malicious prosecution. Though the jury awarded Mr. Vasquez $100,000 in damages for the false imprisonment claim, he never received any payout. That is because the District Court granted the District of Columbia's renewed motion for judgment as a matter of law and, in the alternative, it granted the District of Columbia's motion for remittitur.

Mr. Vasquez now appeals. As our opinion details, we affirm the District Court's order granting summary judgment, but vacate its order granting the District of Columbia's motion for judgment as a matter of law, and in the alternative remittitur. In so doing, we reinstate the jury's verdict and remand for further proceedings consistent with this opinion.

**I.**

For over forty years, a man named Jose Vasquez has evaded prosecution in Will County, Illinois for murder. Hoping to detain and prosecute Jose Vasquez, Will County has entered two warrants into the National Crime Information Center ("NCIC") database, which allows police departments across the country to access its warrants. One warrant charges Jose Vasquez as a fugitive from justice, and links to the second warrant (for murder), which underlies the fugitive from justice charge. Accordingly, if an officer stops the Jose Vasquez listed in the warrant, and has access to NCIC, they may detain him and contact Will County so that it can extradite.

Of course, whether another police department should detain a person based on the information provided by Will County presupposes that Will County's NCIC entries are accurate. But for a long time, that was not the case. Indeed, from 2005 through 2013, the NCIC entry for one of the Will County warrants contained an egregious error: it named Jose Vasquez as the suspect, but the social security number and physical description described a *different* Jose Vasquez, a man who lives in Maryland and has never set foot in Will County, Illinois.

Unsurprisingly, Maryland police departments arrested and detained the wrong Jose Vasquez pursuant to the Will County warrant on a few occasions. So in 2013, Will County amended its erroneous NCIC entry to include a new instruction: "DO NOT DETAIN A VASQUEZ, JOSE [redacted birthday] [Social Security number redacted] THIS IS NOT SUSPECT." *Vasquez v. County of Will*, No. 17-cv-02194, 2021 WL 4476766, at *1 (D.D.C. Sept. 30, 2021) ("*Vasquez I*"). This amendment seemingly made clear that Maryland's Jose Vasquez (the Plaintiff in this case) was not wanted in Will County.

Will County's clarification aside, Mr. Vasquez was detained twice more by MPD due to the Will County murder and fugitive warrants. This appeal arises from those two detentions.

**A.**

On October 23, 2016, Mr. Vasquez was stopped by Officer Terence Sutton, an MPD officer, for a traffic violation. *Vasquez I*, 2021 WL 4476766, at *2. During this traffic stop, Officer Sutton searched the name "Jose Vasquez" in the NCIC database; this search returned two contradictory entries. *Id.* One entry returned a Will County warrant for Jose Vasquez for a failure to appear based on the underlying homicide charge; the name, date of birth, and social security number recorded in the fugitive warrant for the wanted Jose Vasquez all matched those belonging to plaintiff Mr. Vasquez. *Id.* The other NCIC warrant entry, for the homicide charge, contained the message saying "DO NOT DETAIN" the Jose Vasquez with the social security number that matches plaintiff's social security number, because he is "NOT [the] SUSPECT." *Id.*

Nevertheless, Officer Sutton claimed that he did not see the "do not detain" message and arrested Mr. Vasquez. *Id.* And following the arrest, every MPD officer involved in Mr. Vasquez's detention assumed that Mr. Vasquez was the Jose Vasquez wanted in Will County.

The next day, MPD Officer Ernest Cole sent a teletype message to Will County seeking to confirm that Will County would extradite Mr. Vasquez. *Id.* This message did not include Mr. Vasquez's social security number. *Id.* After sending this message, but before receiving a response from Will County, Officer Cole initiated a fugitive criminal action against Mr. Vasquez. *Id.*

Then, five days after Officer Sutton arrested Mr. Vasquez, yet another MPD officer, Officer Ruben Agosto, emailed the Will County Sheriff's Office to, once again, seek confirmation that Will County would extradite Mr. Vasquez. *Id.* This email included a photo of Mr. Vasquez along with his fingerprints. *Id.* Within hours, Will County responded with a teletype message that exonerated Mr. Vasquez and requested that MPD release any holds it had on Mr. Vasquez. *Id.* Officer Agosto did not see this message for another six days. *Id.*

Finally, on November 2, 2016—ten days after the initial arrest—at Mr. Vasquez's bond hearing, defense counsel alerted the court that his client was not the Jose Vasquez wanted in Will County. *Id.* In response, the court ordered the U.S. Attorney's Office to investigate Mr. Vasquez's claim of mistaken identity. *Id.* The very next day, Officer Agosto found the Will County message requesting Mr. Vasquez's release and forwarded this message to the U.S. Attorney, which dismissed the charges against Mr. Vasquez. *Id.*

The details of Mr. Vasquez's eleven-day detention were documented in a few ways. MPD gave Mr. Vasquez a PDID number—a unique identifier that MPD gives to any person it arrests and detains. J.A. 556–57. This allows MPD officers to search detainees and review their past encounters with the Department. J.A. 555, J.A. 560–62. Thus, in Mr. Vasquez's case, MPD now had a file containing his social security number, fingerprints, and information from this arrest, and eventual release from jail. MPD officers were also able to access the details surrounding Mr. Vasquez's bond hearing through JUSTIS, a system created and maintained by the D.C. Superior Court.

**B.**

Mr. Vasquez was arrested again on March 3, 2017 following a traffic stop. This arrest was based on the same erroneous NCIC entry that led to his November 2016 arrest. This time, however, Secret Service—not MPD—handled the traffic stop. Eventually, Secret Service dropped Mr. Vasquez off at MPD's Second District Precinct, thus, placing him in MPD's custody.

Mr. Vasquez vehemently protested his detention and professed his innocence to the MPD officers who detained him. Indeed, he alerted one officer to his social security number, which did not match the number listed in the Will County NCIC entry. J.A. 514, J.A. 517. But to no avail. The officer dismissed his pleas and, instead, called him a liar and a murderer. J.A. 517. Mr. Vasquez would, once again, remain in MPD custody overnight. J.A. 521.

On the morning of March 4th, Officer Leroy Rollins, a fugitive unit officer located in MPD headquarters, J.A. 731, wrote the affidavit that supported Mr. Vasquez's arrest as a fugitive, J.A. 557–59. To prepare this affidavit, Officer Rollins searched Mr. Vasquez in the NCIC database and noticed that his social security number did not match the number on the Will County warrant. J.A. 651–52. Officer Rollins testified that he did not investigate further, but instead messaged Will County asking whether its warrant for Jose Vasquez was still active and if it would extradite. J.A. 662. This message to Will County did not mention that Mr. Vasquez's social security number differed from the number on the Will County warrant. J.A. 659–60. At his arraignment, that afternoon, Mr. Vasquez was released after his attorney alerted the presiding judge that MPD previously arrested and detained him based on this mistaken identity a few months earlier. *See Vasquez I*, 2021

WL 4476766, at * 2; *Vasquez v. District of Columbia*, No. 17-cv-02194, 2023 WL 2682290, at *2 (D.D.C. Mar. 29, 2023) ("*Vasquez II*").

## C.

Following the March 2017 detention, Mr. Vasquez sued; a few of his claims are relevant to this appeal. Mr. Vasquez brought constitutional claims arising under Section 1983 against Officer Agosto and the District of Columbia based on the 2016 arrest. These claims did not survive summary judgment. *See Vasquez I*, 2021 WL 4476766, at *8–10. Mr. Vasquez also brought three common law claims (negligence, false imprisonment, and malicious prosecution) against the District of Columbia based on his 2017 arrest. The negligence claim did not survive summary judgment, but the malicious prosecution and false imprisonment claims went to trial. *See id.* at *4–6.

The jury returned a mixed verdict. It ruled for Mr. Vasquez on the false imprisonment claim, but it ruled for the District of Columbia on malicious prosecution. On the former, the jury awarded Mr. Vasquez $100,000. *Vasquez II*, 2023 WL 2682290, at *8. After the jury verdict, the District of Columbia renewed its judgment as a matter of law on Mr. Vasquez's false imprisonment claim, and in the alternative moved for remittitur. The District Court vacated the jury's verdict and its award, granting the District of Columbia's renewed motion for judgment as a matter of law and, in the alternative, granting the motion for remittitur. *See id.* at *9.

Mr. Vasquez appeals the grants of summary judgment as to his constitutional claims, as well as the District Court's order granting the District of Columbia judgment as a matter of law or, in the alternative, remittitur. We have jurisdiction under 28 U.S.C. § 1291.

## II.

We begin with Mr. Vasquez's respective Section 1983 claims against Officer Agosto and the District of Columbia. We review the District Court's grants of summary judgment de novo. *Lane v. District of Columbia*, 887 F.3d 480, 487 (D.C. Cir. 2018). As we explain, because both Defendants (the movants below) demonstrate that "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law," we affirm the District Court's judgment. Fed. R. Civ. P. 56(a).

## A.

Mr. Vasquez advances a novel argument that Officer Agosto unreasonably seized him in violation of the Fourth Amendment. As best we understand, Mr. Vasquez contends that an officer undertakes a Fourth Amendment duty to conclusively determine whether a detainee is unlawfully seized when the officer begins an investigation into the detainee's innocence within a certain time period. This duty is breached, Mr. Vasquez's argument continues, if the officer fails to sufficiently monitor the investigation and, consequently, ignores exculpatory evidence. Officer Agosto provides a straightforward response: Qualified immunity forecloses Mr. Vasquez's claim.

"An official sued under [Section 1983] is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was *clearly established* at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (emphasis added) (cleaned up). The "clearly established" standard is quite demanding as it requires a showing that "any reasonable official in the defendant's shoes would have understood that he was violating" the plaintiff's constitutional right. *Id.* at 779. An official is said to have

sufficient notice if there is "controlling authority" or "a robust consensus of cases of persuasive authority," *id.* at 780, that clearly prohibit the officer's conduct "in the particular circumstances that he or she faced," *id.* at 779 (internal quotation marks and citations omitted).

The District Court agreed with Officer Agosto, and easily disposed of this argument because Mr. Vasquez failed to cite a single case "from the Supreme Court or this Circuit that would hold an officer accountable in circumstances like those faced by Officer Agosto." *Vasquez I*, 2021 WL 4476766, at *7. So too here.

Minutes into oral argument, Mr. Vasquez's counsel conceded that "there is strangely a paucity of case law on this precise situation." Oral Arg. 7:15. This concession kills Mr. Vasquez's appeal. There is simply no way that the proposed theory of Fourth Amendment liability is "clearly established" if, when asked to present one case in support of his theory, counsel submits that no such case exists.

Mr. Vasquez's briefing relies primarily on one case, *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006). But *Gregory* does not come close to providing Officer Agosto with sufficient notice that his conduct was unlawful. In *Gregory*, a state police employee was alleged to have "intentionally withheld exculpatory information in order to continue Plaintiff's detention without probable cause." *Id.* at 751. But here, Mr. Vasquez suggests that Officer Agosto negligently failed to uncover the existence of readily available exculpatory evidence. There is no way Officer Agosto, who is alleged to have negligently investigated, was put on notice that his conduct was unconstitutional because other state police employees intentionally withheld exculpatory evidence to aid a criminal prosecution.

Therefore, *Gregory*'s facts are clearly distinguishable from the facts that Mr. Vasquez alleges, and do not aid his attempt to clear qualified immunity's high bar. Indeed, the Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 572 U.S. at 779 (cleaned up). This instruction is "especially important in the Fourth Amendment context, where … it is sometimes difficult for an officer to determine how the relevant legal doctrine … appl[ies] to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (cleaned up). We are bound by, and necessarily heed, those instructions here. The District Court correctly granted qualified immunity to Officer Agosto.[1]

**B.**

Mr. Vasquez's attempt to hold the District of Columbia liable for alleged constitutional injuries similarly fails. Municipal liability under Section 1983 is quite limited and extends only to a local government's official policies, practices, or customs that are "responsible for a deprivation of rights protected by the Constitution." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Naturally, *Monell* liability begins with a "predicate constitutional violation." *Lane*, 887 F.3d at 488. Without this

---

[1] In his reply brief, Mr. Vasquez argues that he need not provide a robust authority of case law because the constitutional violation here is patently obvious. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (recognizing that there are some cases where it is "obvious" that the officer has violated a constitutional right); *see also Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (same). Arguments raised for the first time on reply are forfeited; therefore, we do not address it here. *See, e.g.*, *United States v. Lawrence*, 1 F.4th 40, 46 n.3 (D.C. Cir. 2021).

initial showing, "it is inconceivable that the city could be liable." *Id.* (cleaned up).

On appeal, Mr. Vasquez attacks two MPD policies: (1) its protocols for handling teletype messages and (2) its protocols (or lack thereof) for determining whether a person has been correctly identified as a fugitive from justice. In so doing, Mr. Vasquez attempts to make the general point that if MPD had better policies and protocols in place, Mr. Vasquez would not have been misidentified and wrongly detained. Maybe so. But municipalities are not liable under Section 1983 for all "harm-causing … policies," and Mr. Vasquez does not cite to a single case that explains how MPD's alleged negligence is unconstitutional. *Collins v. City of Harker Heights*, 503 U.S. 115, 123 (1992).

Thus, we reiterate one of *Lane*'s closing takeaways, it is "inconceivable" that a municipality is liable under *Monell* where the plaintiff fails to show a "predicate constitutional violation." 887 F.3d at 488 (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). To the extent that Mr. Vasquez alleges that the District of Columbia violated the Fourth Amendment based on the actions of MPD officers, that argument is foreclosed by *Monell* itself: "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Similarly, the invocation of the Fifth Amendment in Mr. Vasquez's complaint is unavailing because there is no cognizable argument that demonstrates the Fifth Amendment's relevance to the facts Mr. Vasquez's complaint alleges. The District Court correctly granted the District of Columbia's motion for summary judgment.

**III.**

Mr. Vasquez also appeals the District Court's judgment as a matter of law, which vacated the jury's finding that the District of Columbia was liable for false imprisonment. Mr. Vasquez further asks that if we agree with him that the District Court erred when it vacated the jury's finding, we should also reverse the District Court's alternative grant of remittitur that reduced the jury's $100,000 award to $6,000. Here, we agree with Mr. Vasquez.

**A.**

At trial, the District Court instructed the jury that Mr. Vasquez had to establish two elements to prove his false imprisonment claim: "(1) MPD officers detained [him] against his will and (2) the detention was unlawful." *Vasquez II*, 2023 WL 2682290, at *3 (internal quotations omitted). As to the second element, the District Court further instructed the jury that "false imprisonment can occur even if the confinement began lawfully but has become unlawful over time." *Id.* A detention becomes unlawful over time, the instruction continued, "when a defendant is under a duty to release the plaintiff but does not do so." *Id.* The refusal to release the plaintiff "with the intention of confining the plaintiff is a sufficient act of confinement to make the defendant liable for false imprisonment." *Id.*

The District Court then instructed the jury on the specific circumstances in Mr. Vasquez's case that would give rise to a duty to release:

> Whether MPD had a duty to release Mr. Vasquez depends upon the belief of its officers that Mr. Vasquez was the person named or otherwise described in the Will County warrant with such

sufficiency as to justify their belief that he was the person wanted by Will County. If officers of the MPD later learned that Mr. Vasquez was *undoubtedly* not the person wanted by the Will County warrant, MPD was required to release Mr. Vasquez unless he objected to his release.

*Id.* The jury returned a verdict finding the District of Columbia liable for false imprisonment and awarded Mr. Vasquez $100,000 in damages. *Id.* at *1. This verdict, we have repeatedly explained, will not be "lightly disturb[ed]." *McGill v. Muñoz*, 203 F.3d 843, 845 (D.C. Cir. 2000); *Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007); *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 163 (D.C. Cir. 2015); *Xereas v. Heiss*, 987 F.3d 1124, 1135 (D.C. Cir. 2021).

"We review *de novo* a district court's disposition of a motion for judgment as a matter of law, in the sense that we apply to the jury's decision the same forgiving standard as did the district court." *Barbour v. Browner*, 181 F.3d 1342, 1344 (D.C. Cir. 1999). So as not to infringe on the jury's functions, when reviewing the entire record, we "must draw all reasonable inferences in favor of the nonmoving party, and [we] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). Though we give "credence" to the "uncontradicted and unimpeached" evidence from the movant, "at least to the extent that that evidence comes from disinterested witnesses," we "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151; *see also Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) (When ruling on a judgment as a matter of law, "the court must bear in mind that the jury is free to believe part and disbelieve part of any witness's testimony."). Under this standard, "[j]udgment as a matter of law is appropriate only if the evidence and all

reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *McGill*, 203 F.3d at 845 (citation and internal quotation marks omitted); *see also* U.S. Const. amend. VII ("no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law").

Start with Officer Rollins's testimony, the officer who prepared the affidavit that supported the charge against Mr. Vasquez as "a fugitive from the State of Illinois." J.A. 649. Officer Rollins told the jury that before he prepares an affidavit, he runs the person's name through NCIC to see "if that person, in fact, has a warrant that the agency had charged him with." J.A. 707. Officer Rollins further testified that he was aware that the person wanted in Will County had a different social security number from the one listed in Mr. Vasquez's arrest packet at the time Officer Rollins prepared the affidavit. J.A. 650–51; *see also* J.A. 357 (Officer Rollins's affidavit explaining that he verified the warrant through NCIC). And notably, Officer Rollins was aware of the differing social security numbers because he printed a report from Cobalt, an internal MPD system, that contained information about Mr. Vasquez. J.A. 651.

Despite noticing the difference in social security numbers, Officer Rollins told the jury that he did not bother to further investigate. J.A. 652. That is because, in Officer Rollins's view, a difference in social security numbers did not "raise a red flag" or demonstrate that he was detaining the wrong Jose Vasquez. J.A. 651–52.

In finding the District of Columbia liable for false imprisonment, the jury was free not to credit Officer Rollins's testimony about the significance of the social security number

mismatch. To the jury, the social security numbers could have done far more than raise a red flag—they could have undoubtedly demonstrated Mr. Vasquez's innocence. Therefore, we must ask a simple question: Was it reasonable for the jury to find that Officer Rollins undoubtedly knew that Mr. Vasquez was not wanted in Will County because his social security number differed from the number listed in the warrant?

We think so. The jury verdict here was consistent with federal law, which recognizes that a social security number is a "means of identification." 18 U.S.C. § 1028(d)(7). Indeed, numerous courts have ruled that a social security number is "unique and therefore sufficient alone to identify a specific individual." *United States v. Mitchell*, 518 F.3d 230, 234 (4th Cir. 2008); *see also Bowen v. Roy*, 476 U.S. 693, 710 (1986); *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 979 (7th Cir. 2023); *Tschida v. Motl*, 924 F.3d 1297, 1304 (9th Cir. 2019). Given the commonly understood importance of social security numbers for identifying individuals, it would have been reasonable for the jury to conclude that Mr. Vasquez's social security number was proof of his identity.

Accordingly, the jury could have reasonably found that Officer Rollins undoubtedly knew Mr. Vasquez was not wanted in Will County when he learned that Mr. Vasquez's social security number was not the same as the social security number listed on the Will County warrant. Of course, in his testimony, Officer Rollins attempted to wriggle out of the straightforward conclusion that a person with a particular social security number is not the same person as someone with a different social security number, but the jury was not required to credit his equivocation. We disagree with the District Court's reasoning given in support of its judgment as a matter of law for three reasons.

First, the District Court reasoned that "a mere difference in Social Security numbers" could not mean that "Officer Rollins *undoubtedly* knew that Plaintiff was not the Jose T. Vasquez described in the Will County warrant and thus had a duty to release him." *Vasquez II*, 2023 WL 2682290, at \*5. But whether this difference is "mere," or significant, is a factual judgment that the jury, and the jury alone, must make. Here, the jury could have reasonably found that this was no "mere" difference—it was determinative; the District Court's opposing view substituted its judgment for the jury's and encroached on the jury's functions.

Second, as the District Court saw it, "Plaintiff presented no evidence to undermine the reasonableness of Officer Rollins's reliance on the Secret Service's confirmation of Plaintiff as the person wanted by Will County." *Id.* Here too, the District Court substituted its judgment for the jury's and, by extension, encroached on the jury's fact-finding duties. In ruling for Mr. Vasquez, the jury had the opportunity to consider whether Officer Rollins's reliance on Secret Service's confirmation was reasonable when he had his own confirmation that Mr. Vasquez was not wanted in Will County based on the difference in social security numbers. Furthermore, there is no evidence in the record that confirms what Secret Service knew about Mr. Vasquez other than the fact that he shared a birthdate and name with the Jose Vasquez wanted in Will County. Thus, the jury could have reasonably placed little weight on Secret Service's confirmation that Mr. Vasquez was the Jose Vasquez wanted in Will County.

Finally, to the extent that the District Court "buttressed" its decision to overturn the verdict based on the jury's finding for the District of Columbia on Mr. Vasquez's malicious prosecution charge, we disagree that the verdicts were fatally inconsistent. *Id.* at \*6. In a false imprisonment claim "neither

malice nor wrongful intent are controlling considerations" and "such allegations, insofar as they refer to false arrest or false imprisonment are mere surplusage." *Clarke v. District of Columbia*, 311 A.2d 508, 511 (D.C. 1973); *see also Marshall v. District of Columbia*, 391 A.2d 1374, 1380 (D.C. 1978) ("[M]alice is not [required]" to prove false imprisonment.). To the contrary, the jury was instructed that Mr. Vasquez could prevail on his malicious prosecution claim only if "Officer Rollins acted with malice." J.A. 964. The jury could reasonably have found that while Officer Rollins undoubtedly knew that Mr. Vasquez was not wanted in Will County, his filing of the fugitive charge was not done with malicious intent. Accordingly, the jury's finding for Mr. Vasquez is reinstated, and we vacate the District Court's order granting judgment as a matter of law.

**B.**

In the alternative, the District Court granted the District of Columbia's motion for remittitur and reduced the jury's award from $100,000 to $6,000. *Vasquez II*, 2023 WL 2682290, at *9. Though we generally review the District Court's decisions on remittitur for abuse of discretion, "a more searching inquiry is required" where, as here, the District Court reduces the jury's award. *See Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997) (quoting *McNeal v. Hi-Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 646 (D.C. Cir. 1988)). That is because when judges modify a jury's verdict, we risk "encroach[ing] on the jury's important fact-finding function." *Id.* (quoting *Vander Zee v. Karabatsos*, 589 F.2d 723, 729 (D.C. Cir. 1978)); *see also Taylor v. Washington Terminal Co.*, 409 F.2d 145, 148 (D.C. Cir. 1969) ("we must consider that the agency to whom the Constitution allocates the fact-finding function in the first instance—the jury—has evaluated the facts

differently"). We conclude that the District Court overstepped its bounds in this instance.

A 94% reduction of a jury award is a vast exercise of discretion that must be supported with ample justifications. Here, the crux of the District Court's analysis centered on damages awarded by other juries that considered somewhat similar facts. *Vasquez II*, 2023 WL 2682290, at *9. Critically, however, none of the proffered cases were truly comparable, because none were described as involving plaintiffs who would have been, like Mr. Vasquez, particularly traumatized by another false imprisonment due to his past wrongful arrests. *See* J.A. 518–22. Here, the jury was free to consider such evidence. *See* J.A. 966 (instructing the jury that it could consider how Mr. Vasquez's "prior arrest and detention in 2016 by MPD affected [him] on March 3rd and 4th of 2017.").

Furthermore, the jury could also rightly consider the increased emotional harm caused by the fact that Mr. Vasquez's protestations of innocence did not just go unheeded; they were mocked with the response that he was a "liar" and a "murderer." J.A. 515–16, 519. Indeed, the jury was instructed that "[e]lements to consider when deciding a damages award include any mental pain and suffering, fear, inconvenience, indignity, insult, humiliation, or embarrassment that Mr. Vasquez proves he suffered directly because of defendant's conduct." J.A. 967. The jury could have reasonably found that the callous actions and stinging epithets of District of Columbia officials proved each and every one of those elements.

Though the District of Columbia claims that actions taken before Officer Rollins saw the mismatched social security numbers are irrelevant to damages, the jury could have reasonably found that those actions aggravated the emotional injuries caused by the later-occurring wrongful detention, as

they were instructed to that effect regarding evidence of his 2016 wrongful detention. J.A. 966. Other than a passing reference to emotional harm, the District Court focused exclusively on the five-hour length of wrongful detention as the basis for damages, and did not discuss at all the evidence of Mr. Vasquez's frustration or the police officers' mocking when granting remittitur. It is well settled that "a decision maker abuses its discretion if it fails to consider a relevant factor." *Amador Cnty. v. Dep't of Interior*, 772 F.3d 901, 904 (D.C. Cir. 2014).

Last, as we have previously explained, "it is awkward to discuss the size of an award through comparison with past decisions." *Peyton v. DiMario*, 287 F.3d 1121, 1127 (D.C. Cir. 2002) (quoting *Mariner v. Marsden*, 610 P.2d 6, 16 (Wyo. 1980)). Thus, district courts must proceed with caution when comparing jury awards "[b]ecause of the unique circumstances of each case as well as the adjustments which would necessarily have to be made for inflation." *Id.* (quoting *Mariner*, 610 P.2d at 16)). Further, "[a] court must be especially hesitant to disturb a jury's determination of damages in cases involving intangible and non-economic injuries." *Langevine*, 106 F.3d at 1024.

Here, where the District Court failed to adequately consider all of the elements of damages that the jury could have properly relied upon to reach its verdict, where the damages were almost exclusively non-economic and thus particularly within the province of the jury's subjective judgment, and where the amount of the damages award is not so great as to "shock the conscience," the granting of remittitur was an abuse of discretion. *See Doe v. Binker*, 492 A.2d 857, 863–64 (D.C. 1985).

20

**IV.**

To conclude, we affirm the District Court's grant of summary judgment to Officer Agosto and the District of Columbia. But we vacate the District Court's judgment as a matter of law and alternative grant of remittitur as to Mr. Vasquez's false imprisonment claim and remand for reinstatement of the jury's verdict. *See* Fed. R. Civ. P. 50(c)(2); *Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 323 n.4 (1967); *see also Taylor*, 409 F.2d at 146, 149.

*So ordered*.